## ABBEY, (FLANDERS v.)

[See Flanders v. Abbey, Case No. 4,851.]

---

## Case No. 8.

### ABBEY v. The ROBERT L. STEVENS.

[22 How. Pr. 78;[1] 21 Law Rep. 41.]

District Court, D. New York. Sept., 1861.

TOWAGE CONTRACT — BREACH OF—ADMIRALTY JURISDICTION—NEGLIGENCE OF TUG—LIABILITY AS CARRIER—PRACTICE—COSTS.

1. A tug which tows vessels for hire is not to be regarded subject to the liabilities of a common carrier or insurer.

2. Where a tug on the Hudson river, having charge of a tow consisting of several vessels, has at night left off one of her tow near a public dock, and after doing so the officers of the tug hail to those on the other vessels in tow, to know their situation, and they respond "All right, go ahead," if the tug does so in the usual manner, bearing herself diligently off into the river, and getting the whole body of the tow gradually under motion, and in doing this one of the stern tier of boats, as it was dragged along in face of the dock, either because its distance off the shore had been misapprehended by the persons conducting them, when the order was passed for the tug to proceed, or that sufficient alacrity or skill was not exercised in controlling their course, or in some other way, and thereby the barge was broken by the occurrence, so that she was shortly after found leaking, and in consequence of the injury filled with water and sunk, the tug is not legally responsible for that loss.

3. It is the duty of the tug to stop on notice of the distress of the barge, and ascertain its actual condition, and apply all means in their power for her rescue or relief.

4. In a case for damages for a breach of towage contract on the Hudson river, whereby a barge was lost between parties residents of the state of New York, the admiralty have not jurisdiction.

[1][Reported by Nathan Howard, Jr., Esq.]

5. Where a point is reserved for further argument and consideration after a trial and decree in the case, it must be upon the pleadings and proofs as they stood on the original hearing.

6. Where a libel is dismissed for want of jurisdiction, no costs are allowable in the final decree to the successful party.

7. The want of jurisdiction presents a total want of power to give costs.

In admiralty. The libellants were owners of the barge Norway, employed in freighting coal upon the Hudson river. The steamboat was used as a tug in towing freighting vessels for hire up and down the river, between Port Ewen at the mouth of Rondout creek and Albany. On the 11th of November, 1856, the barge Norway, laden with coal on freight, was taken in tow by the tug at Port Ewen, under a contract to tow her for hire to Albany. The tow, on its passage up the river when completed, consisted of eight boats loaded with coal, two attached side by side on the larboard bow of the tug, and two on her starboard bow, of the latter of which the Norway was the outside one, lashed and secured to the one intervening between her and the tug. The remaining four coal barges were lashed together side by side, and secured by two hawser lines each about fifty fathoms long, passing from the starboard and larboard quarters of the tug to the larboard sterns of the extreme larboard boat, and the one placed second from the extreme starboard boat, to the latter of which, after the tow was arranged in that manner, a small sloop was taken up and attached by a tow line of about one hundred feet in length to the stern of the last mentioned boat. There was evidence that some of the masters of this tier of boats on towage by the hawser lines, objected to the sloop being subsequently tailed on astern of them, as she in that position would impede the steerage of those boats. Upon the whole evidence, however, it appeared the masters of those boats, when they engaged their towage and took their places astern, were aware that the sloop was to be added to the tail of the line, and that the objections to her being brought into that position rested with the master of the particular boat to which the sloop was to be attached. The boats were also aware, when they were taken in tow, that another freight barge was to be taken up on the passage, at or near Tivoli, to complete the full tow for Albany. When the tug arrived at the former place, she stopped, and another small boat was tailed by a line to the stern of the outside barge, which was lashed to the starboard bows of the tug, and then the rear barges were hailed from the tug to know if all was ready behind. The answer was made from those barges that "all was right, go ahead;" upon which reply the tug was put in motion, and after she and the barges attached to her side had safely passed the landing place, the starboard barge of those in tail,

and which was owned by the libellants, struck against a dock or pier at the head of it, and was so injured thereby that shortly after she sunk, and with her cargo of coal became a total loss.

E. C. Benedict, for libellants.

D. McMahon, for claimants.

BETTS, District Judge. The point in contestation arising out of the facts in this case is, whether there was negligence or want of proper prudence and care in the management of the tug in coming to at Tivoli, and getting again under way with the tow which caused the injury received by the barge Norway. The tug is not to be regarded subject to the liabilities of a common carrier or insurer. (See authorities.)[2] The tug itself was lying off from the dock a distance reasonably sufficient to secure a free course in following her lead, unless some impediment out of view of her master and pilot, or difficulty in the condition or bearing of the boats in the tow astern prevented their rendering the usual aid in their own steerage or keeping their proper line in the track of the tug. The master, before putting the tug in motion, called out to those boats to know their situation, and was informed by them they were ready, and he was directed to go ahead. This he did in the usual manner, bearing the steamer diligently off into the river, and getting the whole body of the tow gradually under motion. The stern tier of boats, as it was dragged along in face of the dock, either because its distance off the shore had been misapprehended by the persons conducting them when the order was passed for the tug to proceed, or that sufficient alacrity or skill was not exercised in controlling their course, or the action of the sloop dragging astern of them, was crowded so far in that the starboard side of the Norway pressed or struck against a pier, and was so broken by the occurrence that she was shortly after found leaking, and in consequence of the injury filled with water, and together with her cargo of coal became a total loss.

In my judgment, the tug is not legally responsible for that loss. (See authorities.)[2] I think, however, it was plainly the duty of the master and pilot of the tug to have stopped the steamer on notice of the distress of the barge, and ascertained its actual condition, and applied all means in their power for her rescue or relief. This was a portion of the reasonable diligence due from the tug to the bailment entrusted to her charge, and if the barge was cut adrift from the tow in its sinking condition, and then abandoned by her, the steamer should be declared liable for the whole damages sustained by the libellants. So also, if after the disaster to the barge was made

known to the master or pilot of the tug, they ordered the barge to hold on and continue with the tow, without examination of her peril or means of sustaining it, and she had been lost in following that direction, the steamer would be properly chargeable with the whole loss, as one resulting from mismanagement and carelessness in conducting the tow, unless clear proof was made that the course taken was a reasonable and proper one upon a fair consideration of the perils of the barge and the means at command for her relief. The apparent weight of the evidence is, that the barge was cut loose by persons on board of her, against the positive commands of the master of the tug, to adhere to the tow. The evidence for the claimants is also strong that the barge was safe in charge of the tug, and could have been taken to Bristol, or landed safely on the middle grounds, if that order had been obeyed. There is pointed testimony on the part of the libellants in contradiction of this representation of the case, and it does not appear to me this branch of the subject was examined with sufficient fulness to enable the court to determine satisfactorily where the truth and right between the parties in this particular lies.

I shall hold in this cause that the tug is not responsible for the original collision of the barge in tow, against the dock or pier at Tivoli; and the libel thus far is to be considered dismissed; but that the libellants are entitled to the further hearing upon the question whether the master and pilot of the tug were guilty of negligence or want of proper attention and precaution in respect to the relief or saving of the barge Norway, after they were notified she was injured and in a sinking condition, either previous to or after she was cut adrift from the tow. Order accordingly.

Subsequently, the libellants insisted that on such a re-argument they were entitled to introduce additional proofs and make new allegations. This question of practice was discussed before the court by the same counsel, and the following decision was made thereon:

BETTS, District Judge. A question is raised and submitted to the court in this case, as a sequent to the decision in the cause on the original hearing, (February term, 1858,) whether a point, reserved therein for further argument and consideration, is to be brought before the court upon the pleadings and proofs as they then stood, or if the parties are allowed to produce additional testimony or allegations. On consideration of this proposition, it is held by the court, that the further proceedings are to be restricted to a re-argument of the matters pertaining to this point as they stood on the original hearing.

---

[2][Authorities cited do not appear in the original report.]

On the re-argument, it was insisted on by counsel for claimants that the court had no jurisdiction. The court so held, and dismissed the libel for want of jurisdiction. The libellants moved that the discontinuance be without costs. The claimants insisted upon costs.

BETTS, District Judge. This was an action for damages incurred by the libellants for alleged negligence and misconduct of the steamer and her crew, in towing a barge and her cargo, owned by the libellants, on the Hudson river, by means of which culpable conduct on the part of the steamer, the barge and her lading were both injured and became a total loss. The steamboat was employed exclusively on the Hudson river as a tug, in towing for hire vessels and other water borne craft, from one port or place to others on that river, and had undertaken to transport the barge and her cargo in question, by towage, from a place on the Hudson river, near Kingston, to Albany; and on the passage up the river, the barge, which was secured to the stern of the tug by a hawser, was, in her towage, hauled against the face of a wharf situate at Tivoli, and so damaged thereby that shortly after passing the wharf the barge sunk, and with her lading was lost. On the hearing upon the merits, in February term, 1858, the court decided that the injury was not owing to the fault of the tug, and, as to that branch of the case, the libel must be dismissed; but the point has not been fully discussed upon the proofs, whether there was a guilty remissness or wrongful action on the part of the tug in not affording relief to the wounded barge after it was made known to the tug that the tow was in a sinking condition, and was in need of and had called for assistance; and leave was accorded the libellants to move the court for further hearing in the cause upon that point. No proceeding has been since moved in the case, until the present term, on the part of the libellants, and leave is now asked in their behalf that they may have an order dismissing the cause without costs, because the subject matter of the suit is not within the jurisdiction of the court. The counsel for the claimants oppose that application, and on their side move that the cause be dismissed, with full costs, upon the state of facts before the court.

I do not consider the libellants entitled to any affirmative order on their motion. The court must necessarily remain passive as to their standing in the case, until they attempt some positive action therein prejudicial to the rights of the claimants. The actor in a suit has authority to abandon his suit at his discretion or advance in it until impeded by counter action on the part of his adversary, and accordingly the libellants in this case require no aid from the court to enable them to withdraw or discontinue the prosecution pending in their favor. Their notice to the claimants, that such measure is contemplated, enables the latter to interpose and seek a mandate from the court, that if the act be performed and the libellants discontinue their action, they be ordered to pay all taxable costs which have been incurred therein on the part of the claimants. This motion is made, and the court is asked to adjudge the libellants, on taking an order for the dismissal of the cause for want of jurisdiction over it by the court, bound to pay clamants' costs therein.

On looking into the subject, I am satisfied, if the cause is treated as dismissed because not within the jurisdiction of the court, the claimants are not entitled to the order asked for, because the whole matter, including costs with the gist of the action, is out of the cognizance of the court. There is no inconsiderable diversity of practice and decision in various state courts, upon the point whether it be competent for the court, when the cause pending therein is dismissed for want of jurisdiction over it, to adjudge costs against the party whose case is so disposed of. It is not important to collate the various opinions found in the books upon the subjects, for, however the rule may be in the state tribunals, it is found to be so definitely determined in the federal courts, after a slight wavering and hesitancy, that it cannot be longer regarded as an open question. The first case in which the point came up formally for consideration, was in February term, 1806. Winchester v. Jackson, 3 Cranch, [7 U. S.] 515. The cause was dismissed for want of jurisdiction. The prevailing party moved for costs. The clerk certified that it had not been the practice in such cases to give costs. But the court directed that the cause be dismissed with costs. No reasons were assigned for the judgment.

In February term, 1807, (Montalet v. Murray, 4 Cranch, [8 U. S.] 47,) the point was reconsidered, and in the first instance the preceding rule was followed, but on the closing of the term the court directed the clerk "that when a judgment is reversed for want of jurisdiction, it must be without costs." In December term, 1824, (McIver v. Wattles, 9 Wheat. [22 U. S.] 650,) the question was again moved, and Ch. Justice Marshall said "that in all cases where the case is dismissed for want of jurisdiction no costs are allowed." In the standing rule of the supreme court, (No. 45,) adopted in 1838, (1 How. [42 U. S.] Appendix 36,) that principle is again recognized in withholding costs in all cases where the dismissal of a cause shall be for want of jurisdiction. In December term, 1850, (Strader v. Graham, 10 How. [51 U. S.] 82,) the cause was dismissed without costs by the supreme court, for want of jurisdiction; and in December term, 1855, Mr. Crittenden moved the court to amend that judgment, and to give judgment for the defendant for

costs. The court denied the motion, saying "that this court can not give a judgment for costs in a case dismissed for want of jurisdiction." Mr. Justice Woodbury looked pretty largely into the cases touching this topic, without being able to work out any satisfactory harmony in the practices of the various judicatures respecting the granting or refusal of costs where the case the court was dealing with, was one not within its jurisdiction. It is clear, however, he regards it no longer a point depending in the United States courts of law or equity, on consideration of equities or demerits in the parties or causes of action. His general statement of the result of his examinations seems based upon the principle that the rule in the federal court is determinate and inflexible. Notwithstanding (he says) then, the equities in favor of costs where a party has been put to expense in a case dismissed for want of jurisdiction, and notwithstanding the broader discretion in courts over costs in chancery than at common law, there is a defect of power to adjudicate or award costs to either side, where there is no power to adjudicate on the merits, and where the case is dismissed on account of the want of any such power. The case is not dismissed for the want of equity or merits, but falls for want of any authority over it, and hence over its incidents also. It is "coram non judice." Burnham v. Rangeley, [Case No. 2,177;] Hathaway v. Roach, [Id. 6,213.] This case stands in that predicament, and the application of the claimants for an award of costs against the libellants, the cause being dismissed for want of jurisdiction, must be denied. Libel dismissed for want of jurisdiction, but without costs.